UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRYAN SCHROM and KARY SCHROM, individually
and on behalf of all others similarly situated,

                    *Plaintiffs,*

          v.

SAINT-GOBAIN PERFORMANCE PLASTICS CORP.,
and HONEYWELL INTERNATIONAL INC. f/k/a
ALLIED-SIGNAL INC.,

                  *Defendants.*

**JURY TRIAL DEMANDED**

**CLASS ACTION**

**COMPLAINT**

1:16-CV-476 [GTS/TWD]

## <u>INTRODUCTION</u>

Plaintiffs, for themselves and all similarly situated people allege:

1.     Plaintiffs seek recovery from Defendants individually and on behalf of the thousands of Hoosick Falls, New York ("Hoosick Falls") residents (the "Class" or "Class Members") for injuries, damages and losses suffered by the Plaintiffs, each of whom suffered injuries as a result of exposure to the introduction of Perfluorooctanoic acid ("PFOA") and other toxic substances into the drinking water of Hoosick Falls.

2.     Plaintiffs bring this action against Defendants for damages incurred and to be incurred by Plaintiffs as a result of Defendants' reckless, grossly negligent and negligent operation of the facility located at 14 McCaffrey Street, Hoosick Falls, NY, 12090 (the "Facility"). Throughout the operational history of the Facility, Defendants have caused the release of hazardous and toxic substances, including but not limited to PFOA, into the surrounding environment.  These releases have contaminated the surface water and groundwater in the Village

of Hoosick Falls.  The harm directly and proximately caused by Defendants includes property damages and personal injuries.

3.      Defendants discharged and released PFOA into an underground aquifer, which is the only source of drinking water for the residents of Hoosick Falls.

4.      Defendants' discharge and release of PFOA into underground aquifers has caused Plaintiffs and the Class personal injuries and property damages.

5.      Plaintiffs and the Class, at the time of sustaining the injuries complained of herein, have been the owners of certain real property consisting of various lands and various types of residences located in Hoosick Falls that received municipal water highly contaminated with the man-made chemical PFOA.

6.      Defendants failed to take any measures to eliminate this danger, as required by law. In so doing, Defendants negligently and recklessly exposed the entire population of Hoosick Falls, including Plaintiffs and the Class, to devastating and irreversible health problems and property damage.

7.      Due to the negligent, willful, and/or wanton actions of Defendants, an unknown quantities of toxic chemicals, including but not limited PFOA, have been released into the groundwater supply relied upon by the entire population of Hoosick Falls, and, most importantly, the Plaintiffs and the Class herein.

8.      Plaintiffs and the Class allege that, as a direct result of Defendants' reckless, negligent, and grossly negligent conduct, they were exposed to PFOA and other toxic substances that were caused to be released into the groundwater aquifer relied upon by Plaintiffs and the Class.  Plaintiffs and the Class further allege that, as a direct result of Defendants' reckless, negligent and grossly negligent conduct, Plaintiffs and the Class have inhaled, ingested or

otherwise absorbed PFOA and other toxic substances into their bodies, and that the exposure to these substances directly and proximately caused their injuries.

9.      Plaintiffs and the Class allege that, as a direct result of Defendants' reckless, negligent and grossly negligent conduct, Plaintiffs and the Class were directly exposed to PFOA and other toxic substances known to cause disease, and that this exposure caused or contributed to their injuries.  Therefore, the doctrine of joint and several liability should be extended to apply to each Defendant herein.

10.      As a direct and proximate result of the Defendants' conduct, Plaintiffs and the Class have suffered injuries and currently suffer and will continue to suffer damages and losses which include, but are not limited to, physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, loss of earnings, income, and earning capacity, property damage, and loss of property value.  Such injuries, damages and loses are reasonably likely to continue to occur in the future.

## THE PARTIES: PLAINTIFFS

11.      Plaintiffs Bryan and Kary Schrom ("Plaintiffs") reside in the Village of Hoosick Falls, New York, at all relevant times.  Plaintiffs obtain their water from a municipal well and has used water from the Village's water supply since 2006.  Since then, Plaintiffs have lived continuously at their home, which receives municipal water, with their two young children.  As a proximate result of Defendants' repeated releases of PFOA into the groundwater relied upon by Plaintiffs, Plaintiffs have suffered, and continue to suffer, property damage.  Further, as a proximate result of Defendants' repeated releases of PFOA, Mr. Schrom suffers from high

cholesterol and high blood pressure.  Upon information and belief, Plaintiffs' property has lost value since the PFOA contamination in Hoosick Falls was disclosed.

## THE PARTIES: DEFENDANTS

12.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

13.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

14.     Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs and the Class, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

15.     Defendant SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION ("Saint-Gobain") is a foreign company with its principal place of business located at 750 East Swedesford Road, Valley Forge, Pennsylvania, doing business in the State of New York.

16.     Defendant Saint-Gobain is a multinational corporation based in Paris with more than 350 years of engineered material expertise.  Defendant Saint-Gobain is one of the top 100 largest industrial companies in the world with € 43.2 billion in sales and 193,000 employees in 64

countries.  Defendant Saint-Gobain employs approximately 1,200 people in the State of New York.

17.     Defendant Saint-Gobain is the world's leading producer of engineered, high-performance polymer products, serving virtually every major industry across the globe.  Saint-Gobain businesses support these key industries in bringing advanced technology polymer products and using them in the most demanding applications.

18.     Defendant HONEYWELL INTERNATIONAL, INC. ("Honeywell"), f/k/a Allied-Signal, Inc., is a Delaware corporation with its principal place of business at 115 Tabor Road, Morris Plains, New Jersey, doing business in the State of New York.

19.     Defendant Honeywell is a Fortune 100 company with a global workforce of approximately 130,000.  It serves a variety of industries, including the specialty chemicals industry.

20.     In 1999, Allied-Signal, Inc. acquired Honeywell.  The combined company adopted Honeywell's name, however, because of name recognition.

21.     Allied-Signal was an aerospace, automotive, and engineering company that was created through the 1985 merger of Allied Corp. and Signal Companies.  Together, these companies had operated in the United States since at least the early 1920s.  Prior to the merger, a significant portion of Allied Corp.'s business was concerned with the chemical industry.

22.     Defendants, at various times herein, and described more fully below, operated the Facility at 14 McCaffrey Street in the Village of Hoosick Falls, New York.

## JURISDICTION AND VENUE

23.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Class are citizens of states different from at

least some of the Defendants' home states, the proposed Class comprises of more than 100 members, and the aggregate amount in controversy exceeds $5,000,000.

24.     Venue is proper in this Court because Defendants conducts substantial business in this District and Plaintiffs' and Class Members' claims arose in this judicial district, pursuant to 28 U.S.C. § 1391(a).

## RELEVANT FACTS

**PFOA Background**

25.     Perfluorooctanoic acid (PFOA, also known as C8 or perfluorooctanoate) is a manufactured chemical that belongs to a group of fluorine-containing chemicals called perfluorinated chemicals (PFCs).  These chemicals were and are used to make household and commercial products that resist heat and chemical reactions, and repel oil, stains, grease, and water.

26.     PFOA was once widely used in nonstick cookware, in surface coatings for stain-resistant carpets and fabric, and in paper and cardboard food packaging (such as microwave popcorn bags and fast food containers).  PFOA was also used in fire-fighting foam and in many products for the aerospace, automotive, building/construction, and electronics industries.

27.     PFOA is a fluorine-containing chemical that is primarily used in the production of fluoropolymers such as poly-tetra-fluoro-ethylene ("PTFE").  Upon information and belief, PFOA was a component of the PTFE that was used at the Facility located at 14 McCaffrey Street.

28.     PFOA is readily absorbed after consumption or inhalation, and it accumulates primarily in the blood stream, kidney and liver.

29.     In 2006, eight major PFOA manufacturers agreed to participate in the U.S. Environmental Protection Agency's ("EPA") PFOA Stewardship Program.  The participating

companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95%, no later than 2010.

30.     PFOA gets into the environment from industrial facilities that make PFOA or use PFOA to make other products.  It also enters the environment when released from PFOA-containing consumer products during their use and disposal.

31.     PFOA can remain in the environment, particularly in water, for many years. PFOA can move through soil and into groundwater, or be carried in air.

32.     Human studies show associations between increased PFOA levels in blood and an increased risk of several health effects, including high cholesterol levels, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

33.     PFOA's extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

34.     The EPA, to date, does not have an enforceable health-based drinking water standard (called a maximum contaminant level or MCL) for PFOA. However, the EPA does have a temporary provisional health advisory level (a non-enforceable guidance value) for PFOA of 400 parts per trillion (ppt) for evaluating the risk of non-cancer effects from short-term PFOA exposure (weeks to months).  The EPA recommends that people not drink or cook with water contaminated with more then 400 ppt of PFOA.


**PFOA in Hoosick Falls**

35.     The Facility at 14 McCaffrey Street began operation in or about 1955.  At the time, Dodge Fiber owned and operated the Facility.

36.     The property was sold to Oak Industries in 1967, which later sold the site to Allied-Signal in 1986.  Allied-Signal sold the facility to Furon Company (Furon) in 1997, and Defendant Saint-Gobain purchased the facility in or around 1999.

37.     Defendant Saint-Gobain is the current owner and operator of the Facility.

38.     Upon information and belief, the manufacture of stain and water resistant fabric has taken place at the Facility since 1967.

39.     Upon information and belief, Defendant Sain-Gobain continued to manufacture water and stain resistance fabric at the Facility from its purchase in 1999 until approximately 2004.

40.     Upon information and belief, PFOA was used in the process of manufacturing water and stain resistance fabric at the Facility.

41.     Saint-Gobain, Furon and Allied-Signal utilized trays for the application of the PFOA Solution to the fabric.  Employees added the solution to the trays during production runs and recovered most of the solution at the end of the run each shift.

42.     Defendants' employees, however, at the direction of corporate officers, washed out and discharged the remaining PFOA Solution from the trays into drains on a daily basis during each shift.  Upon information and belief, those floor drains resulted in the discharge of PFOA into the soil and, in turn, into the aquifer relied upon by Plaintiffs and the Class.

43.     Upon information and belief, throughout the Oak Industries, Allied-Signal and Furon ownership of the McCaffrey facility, each company also used PFOA in a solid form as a part of a separate manufacturing process.

44.     Allied-Signal also made pressure-sensitive tapes, Teflon-coated fabrics, and Teflon sheet, tape and laminates while it owned the McCaffrey plant.

45.     Defendant Saint-Gobain also utilized PFOA in other processes at the McCaffrey facility between, upon information and belief, 1999 and approximately 2004.

46.     Upon information and belief, PFOA seeped into the village's underground wells and aquifers when workers at the McCaffrey Street Plant, over a period of decades, cleaned smokestack filters and other equipment on the side of the hill outside the plant and flushed manufacturing byproducts into a storm drain.

47.     Upon information and belief, Defendants discharged PFOA into the environment in other ways.


**Discovery of PFOA Contamination in Hoosick Falls**

48.     The Village of Hoosick Falls operates and maintains the municipal water system for approximately 3,501 residents, with 1,300 service connections.

49.     In or around April 2015, testing of the village municipal water supply revealed a PFOA concentration of 550 ng/L or ppt, well above the EPA advisory level.

50.     In the summer of 2015, the New York State Department of Health ("DOH") measured the PFOA levels in several water samples collected from the Village of Hoosick Falls Public Water System.  All but one sample were above the EPA provisional health advisory of 400 ppt.

51.     Four samples collected from the public water supply in Hoosick Falls on June 4, 2015 were found to contain more than 600 ppt of PFOA.  Additionally, 2015 groundwater sampling at the Facility owned and operated by Defendants found levels as high as 18,000 ppt.

52.     In August 2015, Defendant Saint-Gobain began its groundwater and soil sampling program at the McCaffrey Facility.

53.     In November 2015, Defendant Saint-Gobain attended the monthly Village of Hoosick Falls board meeting to present the results of its sampling program to the public and notified the Board of its intention to fund granular activated carbon ("GAC") treatment at the

water treatment plant.  Saint-Gobain also agreed to establish and fund a free bottled water program

for residents.

54.     In a letter dated November 25, 2015, EPA Region 2 Administrator Judith Enck

stated: "Based on the presence of PFOA above 400 ppt in Hoosick Falls public drinking water

supply wells, it is recommended that an alternate drinking water source (e.g., bottled water) be

provided to the users of the Hoosick Falls public water supply, until such time as PFOA

concentrations in drinking water are brought consistently below the 400 ppt level."

55.     Residents were advised not to drink, cook, or use the water for basic necessities as a

result of the PFOA contamination caused by Defendants.

56.     In Hoosick Falls, until the bottled water program was put in place, most residents,

including Plaintiffs Bryan and Kary Schrom, were getting their water from the municipal water

supply, which has its intake wells at a distance of about 500 yards from the Facility owned and

operated by Defendants.

57.     Upon information and belief, no medical studies or surveys have been done in

Hoosick Falls regarding the PFOA contamination.

58.     On January 14, 2016, the New York Department of Environmental Conservation

("DEC") and DOH requested the EPA to add Saint-Gobain and other possible sources of

contamination in Hoosick Falls to the National Priorities List ("NPL") under the federal Superfund

program and to investigate the sources of contamination.

59.     In a public meeting held on the same day, EPA officials admitted that designating

Hoosick Falls as a Superfund site would hurt property values in the village.

60.     On January 27, Governor Andrew Cuomo announced he had issued an emergency

regulation to classify PFOA as a hazardous substance and classified the Facility as a state

Superfund site.  The Governor committed to allocating significant State of New York resources to

investigate the source of PFOA, to conduct a Health Risk Analysis to establish a PFOA drinking water guidance level, to retest private wells, and to immediately install filtration systems at schools and other community gathering places.

61.     On February 11, 2016, the DEC served a letter on Defendants Saint-Gobain and Honeywell International, which identified the Defendants as parties responsible for the PFOA contamination in the Village of Hoosick Falls water system now injuring Plaintiffs and the Class.

62.     The DEC's investigation identified groundwater contamination at the Facility where Defendant Saint-Gobain and Defendant Honeywell International used PFOA for decades.  Further, the DEC issued an emergency regulation classifying PFOA as a hazardous substance and classification of the Facility as a state Superfund site.

63.     The DEC demanded that Defendants enter into a Consent Order to "investigate the extent of the contamination, provide for interim remedial measures to protect public health and drinking water supplies, analyze the alternatives for providing clean and safe drinking water, and ultimately design and implement a comprehensive clean and remediation of contamination at or near the Properties."  The DEC also demanded "reimbursement of funds expended . . . in taking response actions at sites where hazardous substances have been released."

64.     According to DEC, "Both Saint-Gobain Performance Plastics Corporation (Saint-Gobain) and Honeywell International, Inc. (Honeywell), or their predecessors, have been identified as the owner, past owner, possible arranger, generator, transporter, supplier, operator, past operator, and/or successor thereto with respect to various industrial facilities at the Properties."

65.     On February 16, 2016, DEC placed the Facility on The Inactive Hazardous Waste Disposal Site Program (the State Superfund Program) as a Class 2 site that "presents a significant threat to the public health and or/environment."

66.     At this time, it is not know how long Plaintiffs and the Class had been drinking municipal water contaminated with PFOA, nor what the PFOA levels were prior to the first drinking water testing that was performed.

67.     Upon information and belief, Defendants ownership and operation at these properties have resulted in releases of PFOA into the surrounding environment, as samples in the Village Water Supply, which is proximate to and downgradient of the Facility, show elevated levels of PFOA.

68.     As a proximate result of the manner in which defendants disposed of PFOA and discharged it into the environment, PFOA contaminated the Village of Hoosick Falls' groundwater and water supply system.

69.     The water contamination in Hoosick Falls has made properties in the area less marketable and resulted in significant property devaluation, prompting the New York Department of Financial Services to meet with concerned property owners.

70.     The water contamination in Hoosick Falls has also caused several banks to cut back on mortgage and refinancing activities in and around Hoosick Falls for fear of further property devaluation.

### _Fear of Cancer_

71.     Plaintiffs and the Class have a justifiable and actual fear of developing cancer as a result of said exposure to PFOA.  With reasonable probability, the prospective, feared, and anticipated consequences may be expected to flow from the past harm.

72.     Plaintiffs and the Class will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages.

73.     The degree of probability that the Plaintiffs and the Class will develop cancers is such that there is a reasonable certainty that such cancers will develop at some future date, thus entitling plaintiffs to recover from Defendants for apprehended consequences that are not presently manifested.

74.     A rational basis exists between the exposure to the above-described toxins and contaminants, and Plaintiffs' and Class Members' currently manifested fear of developing cancer in the future.

### *Medical Monitoring*

75.     As a direct and proximate result of the Defendants' acts, omissions, and conduct as set forth in this Complaint, Plaintiffs and the Class have suffered and continue to suffer a significantly increased risk of contracting a serious injury or latent disease, including, but not limited to, several forms of cancer, liver disease, kidney disease, thyroid disease, high cholesterol, high blood pressure, ulcerative colitis, pregnancy problems, respiratory ailments, gastrointestinal ailments, sleep disturbance, and physical stress.  This increased risk makes periodic diagnostic medical examinations reasonably necessary to establish a "baseline" status of their health and to monitor their status for changes and progressions in their injuries and their sequelae.

76.     Early detection and diagnosis of these diseases is clinically invaluable as early detection and diagnosis can prevent, reduce, and/or significantly delay resulting discomfort, suffering, disability, and dysfunction, and/or death.  Furthermore, these conditions can often appear asymptomatic absent proper testing until they have progressed to an untreatable, permanent, and/or terminal state.

77.     Easily administered, cost-effective monitoring and testing procedures exist that make the early detection and treatment of such injuries or diseases possible and beneficial.  For

example, administration of these readily available non-invasive tests can easily and accurately diagnose the presence of liver failure, respiratory ailments, and heart dysfunction, even in asymptomatic individuals.  Early diagnosis of these diseases and conditions will allow prompt and effective treatment and will reduce the risk of morbidity, and mortality, from which these Plaintiffs and the Class would suffer if diagnosis and/or treatment were delayed until their conditions became overtly symptomatic.

78.     The recommended testing procedures will be subject to expert testimony at the time of trial.

79.     Plaintiffs and the Class are at a high risk for latent and progressive respiratory injuries and therefore need to undergo testing.  Plaintiffs and the Class also need the availability of non-invasive testing as a diagnostic tool and method of treatment in order to prevent untreated and unabated progression of latent injuries, which will result in even more grave injuries and consequences.

80.     The Plaintiffs and Class Members increased susceptibility to certain injuries and the irreparable threat to the their future health and well-being resulting from their exposure to hazardous substances and chemicals in and around their homes, schools, businesses and other public places in the Village of Hoosick Falls can only be mitigated and/or addressed by the creation of a medical program including but not limited to:

   a.   notifying Plaintiffs and the Class of the potential harm from exposure to the PFOA contamination described herein;

   b.   funding further studies of the long-term effects of exposure;

   c.   funding research into possible cures for the detrimental effects of breathing, living and working near the contaminants and toxicants present in the Village of Hoosick Falls as a result of the acts and omissions alleged herein;

   d.   gathering and forwarding to their treating physicians information related to the diagnosis and treatment of injuries which result from their exposure(s) in and around the Village of Hoosick Falls; and

   e.   aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of Plaintiffs and the Class.

82.     To the extent that Defendants' actions resulted in the discharge and/or release of PFOA into the drinking water of Hoosick Falls, thereby entering and injuring the physical and mental well-being of Plaintiffs and the Class, their real and personal property, and their economic interests, Defendants are jointly and severally liable for all damages from contamination in this case.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and similarly situated individuals in the Village of Hoosick Falls, subject to amendment and additional discovery as follows: (a) all residents of Hoosick Falls who have consumed water from the municipal water supply (the "Bodily Injury Class"); and (b) all owners of real property in the Village of Hoosick Falls (the "Property Damage Class").  Plaintiffs are members of both the proposed Bodily Injury and Property Damage Classes they seek to represent.

82.     Excluded from the Class is:

  a.   Defendants, including any entity or division in which Defendants have a controlling interest, along with their legal representative, employees, officers, directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates;

  b.   the Judge to whom this case is assigned, the Judge's staff, and the Judge's immediate family; and

  c.   all governmental entities.

83.     Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded, divided into additional subclasses, or modified in any other way.

## NUMEROSITY AND ASCERTAINABILITY

84.     This action meets the numerosity requirement of Fed. R. Civ. P. 23(a)(1), given that the amount of affected  residents in the Village of Hoosick Falls and property owners, upon information and belief, has reached the thousands, making individual joinder of class members' respective claims impracticable.  While the exact number of class members is not yet known, a precise number can be ascertained from U.S. Federal Census records, State of New York and Village of Hoosick Falls public records, and through other discovery.  Finally, Class members can be notified of the pendency of this action by Court-approved notice methods.

## TYPICALITY

85.     Pursuant to Federal Rules of Civil Procedure 23(a)(3), Plaintiffs' claims are typical of the claims of class members, and arise from the same course of conduct by Defendants. Plaintiffs' persons and real property, like all Class Members, has been damaged by Defendants' misconduct in that they have incurred damages and losses related to the introduction of PFOA into the water supply operated by the Village of Hoosick Falls, causing personal injury and property damages.  Furthermore, the factual bases of Defendants' actions and misconduct are common to all Class Members and represent a common thread of misconduct resulting in common injury to all Class Members.  The relief Plaintiffs seek is typical of the relief sought for absent Class Members.

## ADEQUACY OF REPRESENTATION

86.     Plaintiffs will serve as fair and adequate class representatives as their interests, as well as the interests of their counsel, do not conflict with the interest of other members of the class they seek to represent.  Further, Plaintiffs have retained counsel competent and experienced in class action litigation.

87.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class.

## PREDOMINANCE OF COMMON ISSUES

88.     There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members.  These common legal and factual issues include the following:

   a.  whether Defendants engaged in the conduct alleged herein;

   b.  whether Defendants knew or should have known that exposure to PFOA could increase health risks;

   c.  the extent to which Defendants knew about the PFOA contamination in the water supply operated by the Village of Hoosick Falls;

   d.  whether the manner in which Defendants disposed of PFOA proximately caused the contamination of PFOA in the drinking water;

   e.  whether Defendants made unlawful and misleading representations or material omissions with respect to the health impacts of PFOA in the drinking water supply;

   f.  for the Bodily Injury Class, whether any health issue or bodily injury of Plaintiffs and the Class are attributable to exposure of PFOA in the water supply;

   g.  for the Property Damage Class, whether property values in Hoosick Falls declined in value following the disclosure of the PFOA contamination; and

   h.  whether Plaintiffs and Class Members are entitled to damages and other monetary relief, including punitive damages, and if so, in what amount.

## SUPERIORITY

89.     The class action mechanism is superior to any other available means of the fair and efficient adjudication of this case.  Further, no unusual difficulties are likely to be encountered in the management of this class action.  Given the great amount of Hoosick Falls residents impacted by Defendants' conduct, it is impracticable for Plaintiffs and the Class to individually litigate their respective claims for Defendants' complained of conduct.  To do so would risk inconsistent or

contradictory judgments and increase delays and expense to both parties and the court system. Therefore, the class action mechanism presents considerably less management challenges and provides the efficiency of a single adjudication and comprehensive oversight by a single court.

## **DECLARATORY AND INJUNCTIVE RELIEF**

90.     Since Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and Class Members, final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

## **AS AND FOR A FIRST CAUSE OF ACTION:**
## **NEGLIGENCE**

91.     Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the paragraphs numbered 1 though 90 as if fully restated herein.

92.     Defendants, and each of them, breached their duty of reasonable care which a reasonably prudent person should use under the circumstances, by allowing PFOA to be released into the drinking water of the Village of Hoosick Falls.

93.     Defendants, and each of them, as owner and operator of a the Facility that utilized PFOA, owed Plaintiffs and the Class a cognizable duty to exercise reasonable care to ensure that dangerous substances at the Facility were disposed of reasonably and properly so as not to discharge hazardous or toxic substances, including but not limited to PFOA, into the environment and to prevent the personal injury and property damage described of herein.

94.     Defendants knew or should have known that exposure to PFOA was hazardous to the environment and to human health.

95.    Defendants knew or should have known that the manner in which they were handling and/or disposing PFOA would result in the contamination of the water supply in the Village of Hoosick Falls.

96.    Defendants, and each of them, negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally created the contamination of drinking water in and around the real property of Plaintiffs and Class Members.

97.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs and the Class a duty to act reasonably to remediate, contain, and eliminate the contamination before it injured Plaintiffs, the Class and their property and/or to act reasonably to minimize the damage to Plaintiffs, the Class and their property.

98.    Defendants breached that duty by failing to act reasonably in the handling and/or disposal of PFOA at the Facility, in such a manner that caused the discharge of PFOA into the water supply relied upon by Plaintiffs and the Class.  Furthermore, Defendants failed to take reasonable, adequate and sufficient steps or action to eliminate, correct, or remedy any contamination after they occurred.

99.    Defendants breached that duty by failing to timely notify the Plaintiffs and the Class of the contamination of the Village of Hoosick Falls' drinking water, and, consequently, the presence of PFOA in the real properties of Plaintiffs and Class Members.

100.    As a result of Defendants' breaches of their duty to timely notify and act reasonably in handling and/or disposing of PFOA, Plaintiffs and the Class were forestalled from undertaking effective and immediate remedial measures, and Plaintiffs and the Class have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

101.    Defendants negligently breached their duties to the Plaintiffs and the Class by unreasonably releasing PFOA-containing waste into the environment and contaminating the groundwater underlying the Facility.

102.    Defendants' breaches of their duties were direct and proximate causes of Plaintiffs' and Class Members' damages and the imminent, substantial and impending harm to their homes and health.

103.    Plaintiffs and the Class suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above.  At the time Defendants breached their duties to Plaintiffs and the Class, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs and the Class so apparent as to entitle them to be protected against such actions or inactions.

104.    Accordingly, Plaintiffs and the Class seek damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries to their persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Class to their original position, including, but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, and consequential damages flowing from the negligence which are the natural and proximate result of Defendants conduct in an amount to be proved at trial.

**AS AND FOR A SECOND CAUSE OF ACTION:**
**PRIVATE NUISANCE**

105.    Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the paragraphs numbered 1 though 104 as if fully restated herein.

106.    Defendants' wrongful actions in the creation of the contamination, maintenance of their land and water facilities, and failure to reasonably abate, minimize and/or remediate the contamination resulted in the presence of the contaminants in the persons and/or on properties of Plaintiffs and the Class, the creation of noxious odors, and the risk of injuries, and/or annoys Plaintiffs and the Class in their enjoyment of their legal rights and quality of life.  Such conditions constitute an ongoing specific, particular and unique burden on the persons of Plaintiffs and Class Members and their property.

107.    Such wrongful acts by Defendants in the maintenance and use of their land and the Facility and the failure to remediate the contamination was and is a foreseeable and proximate cause of injury, discomfort, annoyance, inconvenience, and/or damage to Plaintiffs, the Class and their property.

108.    Defendants' conduct is the legal cause of the intentional, unreasonable, negligent, and/or reckless invasion of the Plaintiffs' and Class Members' interests in the private use and enjoyment of their land.  Such actions' tendency is to create danger and inflict injury upon person and property.

109.    Defendants' conduct in performing acts or failing to act has caused one or more substantial, unreasonable, and intentional interferences with the right of Plaintiffs and Class Members to use and enjoy their property as discussed above.

110.    Accordingly, Plaintiffs and the Class seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses and to restore Plaintiffs and the Class to their original position, including, but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, and direct and consequential damages flowing from

the nuisance and trespass which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.

## AS AND FOR A THIRD CAUSE OF ACTION:
## TRESPASS

111.    Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the paragraphs numbered 1 though 110 as if fully restated herein.

112.    Defendants' negligent, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFOA to be released into the drinking water for the Village of Hoosick Falls.

113.    Defendants' willful, wanton, and intentional failure to act and/or their affirmative choice of action and following course of action caused PFOA to enter and trespass upon the land and realty of the Plaintiffs and the Class and cause an injury to their possession and/or right of possession.

114.    Upon information and belief, Defendants had exclusive control over the Facility which, through acts and/or omissions by Defendants in the handling and/or disposal of PFOA and other chemicals, resulted in the contamination of the water supply relied upon by Plaintiffs and the Class at all relevant times.

115.    At the time that the above described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that large quantities of PFOA would and/or could be introduced into the persons and properties of Plaintiffs and Class Members.

116.    The above-described affirmative, voluntary, and intentional acts were performed with the willful intent to cause PFOA to be disbursed through the water and onto the land and property of Plaintiffs and the Class.

117.    These voluntary actions resulted in the immediate and continued trespass, injury and damage to Plaintiffs and the Class, their property and their right of possession of their property.

118.    Further, Defendants' actions in introducing unknown quantities of PFOA into the drinking water of the Village of Hoosick Falls and consequently the persons and properties of Plaintiffs and the Class were done with actual malice, and in wanton and willful and/or reckless disregard for Plaintiffs' rights, health and property.

119.    Additionally and/or alternatively, Defendants' decision to delay and the resulting delay in taking any affirmative action to eliminate, correct, and/or remedy the PFOA release and contamination after having knowledge and notice of said contamination were done with actual malice, and in wanton and willful and/or reckless disregard for the rights, health and property of Plaintiffs and Class Members.

120.    Accordingly, Plaintiffs and the Class seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses and to restore Plaintiffs and the Class to their original position, including, but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, and direct and consequential damages flowing from the nuisance and trespass which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.

**AS AND FOR AN FOURTH CAUSE OF ACTION:**
**ABNORMALLY DANGEROUS ACTIVITY AND**
**ABSOLUTE AND STRICT LIABILITY**

121.    Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the paragraphs numbered 1 though 120 as if fully restated herein.

122.    Defendants' aforesaid failure to employ reasonable care which a reasonably prudent person should use under the circumstances of handling and/or disposing of PFOA resulted in the discharge of PFOA into the environment and water supply operated by the Village of Hoosick Falls, relied upon by Plaintiffs and the Class.

123.    Defendants' aforesaid failure constitutes ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances, namely PFOA.

124.    Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to leach into the land and ground water surrounding the Facility, including the potable water supply relied upon by Plaintiffs and the Class.

125.    Further, Defendants' contamination of the potable water supply with PFOA creates the likelihood for personal injury and property damage to individuals who use and rely upon the water.

126.    The risk of such activities outweighs any value associated with the same.  As the result of the said ultra-hazardous and abnormally dangerous activities, plaintiffs have suffered damages and imminent, substantial and impeding harm to their health, their families, to the value of their homes and properties, and plaintiffs have expended or will be forced to expend significant resources to safeguard their health and their property, obtaining monitoring, testing, remediating services or equipment, as well as health monitoring indefinitely for years and decades into the future.

127.    By reason of the foregoing, Defendants are strictly liable in tort for personal injury and property damage sustained by Plaintiffs and the Class.

128.    Accordingly, Plaintiffs and the Class seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses and to restore Plaintiffs and the Class to their original position, including, but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, and direct and consequential damages flowing from the nuisance and trespass which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION:
## MEDICAL MONITORING

129.    Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the paragraphs numbered 1 though 128 as if fully restated herein.

130.    At all relevant times herein, Defendants owed a duty to Plaintiffs and the Class to ensure that the manufacturing processes they chose to employ did not unreasonably endanger the drinking water relied upon by residents of Hoosick Falls.

131.    The significantly increased risks associated with exposure to PFOA, make periodic diagnostic medical examinations reasonable and necessary.

132.    Easily administered, cost effective tests are in existence, such that an available medical monitoring program is reasonable and necessary for continued monitoring of diagnosed conditions as well as for early detection of yet to be diagnosed injuries.

133.    The reasonableness and necessity of a medical monitoring program is supported by scientific principles, medical literature, and expert opinion.

134.    As a direct and proximate result of Defendants' reckless, negligent and grossly negligent operations and actions, as set forth herein, Plaintiffs and the Class have been exposed to

potentially lethal doses of hazardous and toxic contaminants, and, as a result, suffer a significantly increased risk of death, further surgery, or other serious health complication.  This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.  Easily administered, cost effective monitoring and testing procedures exist which make the early detection and treatment of such injuries or disease possible and beneficial.

## PUNITIVE DAMAGES

135.    Plaintiffs and the Class hereby repeat, reallege, and reiterate each and every allegation in the paragraphs numbered 1 though 134 as if fully restated herein.

136.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing property damage, nuisances, and trespasses upon the persons and properties of Plaintiffs and the Class, disregarding their protected rights.

137.    Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFOA-containing waste would be effectively disposed of and not discharged into the surrounding environment.

138.    Defendants have caused great harm to the property and water supplies of Plaintiffs and the Class and demonstrated an outrageous conscious disregard for their safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs and the Class demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

A.      an award certifying the proposed Bodily Injury and Property Damage Classes,

designating Plaintiffs as the named representatives and designating the undersigned as Class

Counsel;

B.      an award for general damages;

C.      an order for an award of compensatory damages;

D.      an order for an award of punitive damages;

E.      an order for an award of actual reasonable attorney fees and litigation expenses; and

F.      an order for all such other relief the Court deems just and proper.


                                        Respectfully submitted,



**NAPOLI SHKOLNIK PLLC**                **POWERS AND SANTOLA, LLP**

By:  /s/ Hunter Shkolnik                By:  /s/ John K. Powers
Hunter Shkolnik (NDNY #512533)          John K. Powers (NDNY #102384)
Paul J. Napoli, *Pending Admission*     Laura M. Jordan (NDNY #512419)
Patrick J. Lanciotti, *Pending Admission*   Adam P. Powers (NDNY #518085)
1301 Avenue of the Americas, Tenth Floor    39 North Pearl St.
New York, NY, 10019                     Albany, NY, 12207
(212) 397-1000                          (518) 465-5995
hunter@napolilaw.com                    jpowers@powers-santola.com
pnapoli@napolilaw.com                   ljordan@powers-santola.com
planciotti@napolilaw.com                apowers@powers-santola.com


*Attorneys for Plaintiffs and the Proposed Class*

April 25, 2016